IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DONALD R. SLATTERY,**

  **Plaintiff,**

 vs.            Civil Action 2:11-CV-202
               Judge Watson
               Magistrate Judge King

**GARY MOHR, *et al.*,**

  **Defendants.**

## REPORT AND RECOMMENDATION

  Plaintiff Donald Slattery ("plaintiff"), an Ohio inmate formerly incarcerated at the Ross Correctional Institution ("RCI") and currently incarcerated at the Marion Correctional Institution ("MCI"), brings this action pursuant to 42 U.S.C. §1983 alleging deliberate indifference to his medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution. *See Initial Screen of the Complaint*, Doc. No. 4; *Complaint*, Doc. No. 3. Plaintiff seeks declaratory, injunctive and monetary relief. *Complaint*, Doc. No. 3. Plaintiff has named six employees of the Ohio Department of Rehabilitation and Correction ("ODRC") as defendants: Gary Mohr, Director of ODRC; Dr. Andrew Eddy, Medical Director for ODRC's Bureau of Medical Services; Robert Jeffries, Warden at RCI; Lisa Bethel, Health Care Administrator ("HCA") at RCI; Kelley Detillon, Dietician Technician at RCI; and Dr. Gary Krisher, Chief Medical Officer ("CMO") at RCI (collectively, "defendants").

This matter is before the Court for consideration of defendants' *Motion for Summary Judgment*, Doc. No. 27. For the reasons that follow, it is **RECOMMENDED** that defendants' motion be **GRANTED**.

I.  Background

In the verified *Complaint*, plaintiff alleges that he suffers from Crohn's disease [at times referred to as "CD"]and gastroesophageal reflux disease [at times referred to as "GERD"] and that he received inadequate treatment for these conditions from approximately September 2005 to April 2007 and again from March 2009 to January 2011. *Complaint*, Doc. No. 3, ¶¶ 11, 25, 26, 72, 77; *Plaintiff's Memorandum in Opposition to Summary Judgment*, Doc. No. 30, pp. 6, 8, 17 ("*Memorandum in Opposition*").

Plaintiff's allegations relating to the period September 2005 to April 2007 concern treatment administered by medical professionals not named as defendants.[1] *Complaint*, Doc. No. 3, ¶¶ 26-34. It is therefore unnecessary to further address those allegations. Moreover, plaintiff acknowledges that the care that he received during the period April 2007 to March 2009 was adequate. *Memorandum in Opposition*, Doc. No. 30, p.8

---

[1] In particular, plaintiff alleges that he requested treatment and was seen by Dr. James Coulter soon after his arrival at RCI in September 2005, and that despite plaintiff's reports of illness Dr. Coulter failed to prescribe medicine or refer plaintiff to a specialist. *Complaint,* ¶¶ 25-26. Plaintiff alleges that adequate treatment could have prevented the surgery that he underwent in October 21, 2005 "to repair an active perirectal abcess . . . [and] to determine the source of the infection and possible fistula." *Id.* ¶ 27. Plaintiff also alleges that he was seen by Dr. Coulter in November 2005 and prescribed an antibiotic "to battle the active infection in his perirectal abcess"; that RCI staff submitted a request for specialist care for plaintiff in February 2006; that "plaintiff continued to receive sporadic, minimal care over the next several months, and Dr. James Coulter prescribed the pain medication Tramadol to mask the pain symptoms the plaintiff had developed"; and that he received a CT scan in March 2007 but that "[n]o other examinations or actions were taken." *Id.* ¶¶ 30, 33, 34. Because plaintiff does not name Dr. Coulter as a defendant, and because he does not allege that any of the named defendants directly participated in his care prior to March 2009, the Court will not address these allegations.

2

(acknowledging that "[f]rom April 2007 to March 2009, [he] did receive medical attention from ODRC medical staff and by Edward J. Levine, M.D., who is a board certified Gastroenterologist with the Ohio State University Medical Center"); *see also Complaint*, Doc. No. 3, ¶ 77 ("During a period of eight months from August 2008 until March 2009 the plaintiff did receive appropriate care from Dr. Levine at the Ohio State University G.I. Clinic."). It is therefore unnecessary to repeat plaintiff's allegations regarding his treatment for that period. Plaintiff does complain that, beginning in March 2009, the named defendants were deliberately indifferent to his serious medical needs.

Plaintiff's allegations about defendant Detillon, the dietician technician at RCI, concern a single appointment in March 2009. *Id.* ¶ 43; *see Motion for Summary Judgment*, Doc. No. 27, p.1. Plaintiff, who alleges that he was referred to defendant Detillon by Dr. Levine for a dietary consultation, complains that defendant Detillon "arranged for her superiors to cancel the plaintiff's prescriptions" for Ensure, "reasoning . . . that the plaintiff weighed too much to receive Ensure, as at five-foot ten-inches the plaintiff would have to weigh less than one hundred sixty-five pounds to qualify for nutritional supplements." *Complaint*, Doc. No. 3, ¶ 43; *see also* Defendants' Exhibit C, Doc. No. 27-3, p.1. Plaintiff also complains about diet advice given by defendant Detillon: Plaintiff alleges that defendant Detillon "informed the plaintiff that she had never heard of tap water, beef, port, soy, milk, dairy products, or ruffage [sic] aggravating C.D. [Crohn's disease], and that the plaintiff should be eating these foods as they are served in the cafeteria as part of his regular diet." *Complaint*, Doc. No. 3, ¶ 43; *see also* Defendants' Exhibit C, Doc. No. 27-3, p.1; Plaintiff's Exhibit 27,

3

Doc. No. 30-1, pp. 27-28. Plaintiff alleges that defendant Detillon offered "[n]o advice towards a C.D. or G.E.R.D. specific diet." *Complaint*, Doc. No. 3, ¶ 43; *but see* Plaintiff's Exhibit 27, Doc. No. 30-1, p.27 (nutrition assessment noting goal of "[m]aintain[ing] a healthy BMI").

Plaintiff admits that he was seen by defendant Krisher, the CMO at RCI, and prescribed different medications for Crohn's disease and gastroesophageal reflux disease on three occasions: (1) in March 2010 defendant Krisher "extended the plaintiff's prescriptions for Prilosec, Docusate, Asacol, Imuran, and Tramadol," *Complaint,* ¶ 50, (2) in September 2010 defendant Krisher admitted plaintiff to the infirmary and prescribed "two Prilosec tablets daily . . . for fourteen days, and Tramadol 100mg three times daily for the duration of the plaintiff's Infirmary admission," *id.* ¶ 59, and (3) during a period extending from January 11 to January 14, 2011, plaintiff was seen by defendant Krisher, admitted to the infirmary, given Asacol, Azathioprine, Tylenol and Zantac, and was discharged with prescriptions for Tylenol, Zantac, and a fiber laxative, in addition to an existing prescription for Azathioprine, *id.* ¶¶ 68-71. *See* Defendants' Exhibit A, Doc. No. 27-1, p.3 (declaring that plaintiff was admitted to the infirmary and examined during this period "[i]n accordance with the ODRC algorithm for Crohn's disease" and that "stool counts . . .[and] a Complete Blood Count ('CBC') test" were conducted).

Plaintiff alleges that defendant Krisher improperly cancelled existing appointments or prescriptions. In particular, plaintiff alleges that (1) on May 14, 2009 and July 28, 2009, defendant Krisher cancelled plaintiff's scheduled appointment with Dr. Levine, noting on the later

4

date that the prison could treat plaintiff "in-house," *Complaint,* ¶¶ 46, 48; (2) on June 9, 2010, defendant Krisher cancelled an existing prescription for the pain medication Tramadol and issued instructions advising plaintiff that if he was "experiencing chronic pain . . . [he could] self-admit to the Infirmary, and . . . receive as much Tramadol as needed," *id.* ¶ 52; *see also* Defendants' Exhibit A, Doc. No. 27-1, p.2 (declaring that defendant Krisher "changed his analgesic Tramadol/Ultram to be used only when his pain was moderate to severe" as determined following an admission to Inmate Health Service because the medicine "is not recommended for Crohn's condition"); Defendants' Exhibit M, Doc. No. 27-13, p.1; (3) on August 14, 2010, defendant Krisher cancelled existing prescriptions for Prilosec and Colace without examining the plaintiff, action that a nurse later informed plaintiff was taken pursuant to a prison policy requiring that over-the-counter medication be purchased through the prison commissary, *Complaint,* ¶¶ 55, 57; and (4) on or about October 28, 2010, defendant Krisher cancelled an existing prescription for Colace and instructed plaintiff to purchase the medication in the prison commissary, *id.* ¶ 62.

Plaintiff also alleges that he was seen by medical professionals, who are not named as defendants in this action, on five dates from July 2009 to December 2010: (1) in approximately July 2009, plaintiff was seen by two nurses in the prison and, as he requested, received a renewed prescription for Tramadol, *id.* ¶ 49, (2) on October 20, 2010, plaintiff was seen by a nurse in the prison, admitted to the infirmary and released with prescriptions for Prilosec, Asacol, Colace, and Azathioprine, *id.* ¶ 61, (3) on October 28, 2010, plaintiff was seen by a nurse in the prison and informed of defendant Krisher's cancellation of his

5

prescription for Colace, *id.* ¶ 62,[2] (4) on November 16, 2010, plaintiff was seen by a nurse in the prison, was given a 180 day prescription for Prilosec but was denied prescriptions for Colace and pain medication, *id.* ¶ 65, (5) on December 9, 2010, plaintiff was seen by a nurse in the prison, was prescribed the antibiotic Cipro but was denied prescriptions for pain medication and nutritional supplements, *id.* ¶ 68.

Plaintiff's *Complaint* also asserts a claim of denial of due process in connection with Dr. Krisher's June 9, 2010 directive that plaintiff enter the prison infirmary in order to receive narcotic pain medication. "If the plaintiff had remained an inpatient in the Infirmary long-tern, his prison sentence would in effect have been lengthened as the plaintiff would have forfeited one 'Good Day' . . . a month while pursuing medical treatment . . ." [and] would have in effect been volunteering for administrative segregation. . . . . ." *Id.*, ¶¶ 89-90. The *Complaint* also alleges that defendant Krisher cancelled plaintiff's appointments with an outside specialist, cancelled plaintiff's prescription for the narcotic pain medication Tramadol except upon admission to the infirmary, cancelled plaintiff's prescriptions for over the counter medications Prilosec and Colace and admitted plaintiff to the infirmary for observation, all in retaliation for plaintiff's pursuit of administrative grievances regarding his medical care. *Id.*, ¶¶ 93-97.

In support of the *Motion for Summary Judgment*, defendants have submitted declarations by defendant Krisher and defendant Bethel, HCA at RCI, and copies of plaintiff's medical records and of a portion of

---

[2] Plaintiff alleges that he informed the nurse that Prilosec was unavailable in the commissary at the time and the nurse promised to inform defendant Krisher. *Complaint,* ¶ 62.

6

plaintiff's commissary purchase records.[3] Submitted in connection with the *Memorandum in Opposition* are additional medical records, plaintiff's own notes and the *Affidavit of Donald R. Slattery*, Doc. No. 31.

**II. Summary Judgment Standard**

The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson,* 477 U.S. at 251.

The party moving for summary judgment always bears the initial

---

[3] Defendants have failed to authenticate the records but, because plaintiff does not challenge the authenticity of the evidence, and because no gross miscarriage of justice will result, the Court will consider the medical records in considering the *Motion for Summary Judgment*. *See Johnson v. U.S. Postal Serv.*, 64 F.3d 233, 237 (6th Cir. 1995).

7

responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Catrett,* 477 U.S. at 323. Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250 (quoting former Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir. 1995)("[N]onmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial."). "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on the pleadings or merely reassert the previous allegations. It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts.'" *Gover v. Speedway Super Am., LLC*, 284 F.Supp.2d 858, 861-62 (S.D. Ohio 2003)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). Instead, the non-moving party must support the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Gover*, 284 F.Supp.2d at 862 (citing *InteRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989)). Instead, "a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id.*; *see also* Fed. R. Civ. P. 56(c)(3).

**III. Eighth Amendment Claims**

    **A.    Deliberate Indifference Standard**

In an action such as this, a claim of failure to provide adequate medical treatment requires a showing that a defendant acted with deliberate indifference to an inmate's serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). There are two parts to this constitutional claim - one objective, one subjective. *Flanory v. Bonn,* 604 F.3d 249, 253 (6th Cir. 2010) (citing *Farmer v. Brennan,* 511 U.S. 825, 833 (1994)). To satisfy the objective component, the plaintiff must demonstrate the existence of a sufficiently serious medical need; for the subjective component, the plaintiff must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care. *Id.* at 253-54. The United States Court of Appeals for the Sixth Circuit has explained that a condition is "sufficiently serious" when the need for medical care is obvious even to a lay person. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899-900 (6th Cir. 2004). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). The requisite state of mind "entails something more than mere negligence" but "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835.

Thus, not every claimed denial of adequate medical treatment amounts to a constitutional violation. *Estelle*, 429 U.S. at 105. The United States Court of Appeals for the Sixth Circuit distinguishes "between cases where a complaint alleges a complete denial of medical care and

9

those cases where the claim is that the prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where a prisoner has received some medical attention and the dispute is over the adequacy or course of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that actually sound in state tort law. *Id.*; *see also Wester v. Jones*, 554 F.2d 1285, 1286 (4th Cir. 1977) ("Even if the doctor were negligent in examining [plaintiff] and in making an incorrect diagnosis, his failure to exercise sound professional judgment would not constitute deliberate indifference to serious medical needs."); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1081 (3d Cir. 1976) ("Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts.").

Moreover, to succeed on a claim under 42 U.S.C. §1983, a plaintiff must show the personal involvement of each defendant with respect to the alleged constitutional violation. Liability based on a theory of *respondeat superior* is not cognizable under §1983. See *Turner v. City of Taylor*, 412 F.3d 629, 649 (6th Cir.2005). In order to be held liable under §1983, a defendant with supervisory authority must have either "encouraged the specific incident of misconduct or in some other way directly participated in it." *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.*; *see also Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002) ("Supervisory liability under §1983 cannot be based upon a mere failure to act but must be based upon active unconstitutional behavior.").

### B. Deliberate Indifference Claims Against Defendants Mohr, Eddy, Jeffries and Bethel

Defendants Mohr, Eddy and Jeffries urge summary judgment in their favor because plaintiff cannot show their personal involvement with respect to the alleged constitutional violations. Defendant Bethel does not argue that summary judgment is appropriate in her favor on the same basis, but plaintiff's *Memorandum in Opposition* makes it clear that the claims against her rest on the same theory as the claims against defendants Mohr, Eddy, and Jeffries: Plaintiff concedes that "[d]efendants Mohr, Eddy, Warden Jeffries, and Bethel did not commit the constitutional violations" but he seeks to hold these defendants liable because "they failed to correct them in the course of their supervisory responsibilities, and affirmed the actions of Defendant Detillon and Dr. Krisher following their investigations of the alleged conduct." *Memorandum in Opposition*, Doc. No. 30, pp. 27-28.

Specifically, plaintiff's claims against defendants Mohr and Eddy are based primarily on the allegation that "[d]efendants Mohr and Dr. Eddy are responsible for the creation and implementation of th[e] policy" regarding the provision of health care to prisoners. *Complaint,* ¶ 75. Plaintiff's claims against defendant Jeffries are based primarily on the allegation that plaintiff's family members wrote to defendant Jeffries, "advis[ed] him that the plaintiff's family felt that he was receiving inadequate medical care . . . and asked that Mr. Jeffries intercede." *Id*. ¶ 60. Plaintiff's claims against defendant Bethel concern three informal complaint resolutions that plaintiff filed with her "requesting assistance in having his Tramadol prescription renewed," "requesting assistance in having his prescriptions for Prilosec and Colace renewed,"

11

and "requesting assistance in receiving health care from a G.I. specialist." *Id.* ¶¶ 53, 57, 58. Plaintiff further alleges several failures "to amend existing policies and procedures," failures "to implement a quality assurance program," and failures to prevent inadequate care from prison medical personnel. *Id.* ¶¶ 99-106, 109.

To the extent that plaintiff seeks injunctive relief in his claims against defendant Jeffries, defendant Bethel, defendant Detillon, and defendant Krisher, these claims are now moot: All of these defendants are employees of RCI and no longer have the authority to issue such relief to plaintiff, who is currently incarcerated at MCI. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

Furthermore, prison administrators' "denial of [a plaintiff's] administrative grievances and their failure to remedy the alleged [unconstitutional] behavior" does not amount to a constitutional violation. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Because plaintiff does not allege that defendants Mohr, Eddy, Jeffries and Bethel participated directly in his medical care, and because plaintiff appears to base his claims against these defendants on their supervisory roles or on their failures to remedy allegedly deficient medical treatment, summary judgment in favor of these defendants is appropriate.

### C. Deliberate Indifference Claims Against Defendants Detillon and Krisher

The remaining named defendants argue that summary judgment in their favor is appropriate because plaintiff cannot show that they were deliberately indifferent to a serious medical need. The Court will deal with the claims against each defendant in turn.

#### (1) Deliberate Indifference Claims Against Defendant Detillon

Plaintiff's only allegation regarding defendant Detillon is that this defendant "denied or delayed access to the plaintiff's prescribed nutritional supplements of liquid Ensure." *Complaint*, Doc. No. 3, ¶ 77; *see also id.* ¶ 43 (alleging that defendant Detillon "arranged for her superiors to cancel the plaintiff's prescriptions"); *Memorandum in Opposition*, Doc. No. 30, p.8. As a preliminary matter, plaintiff never expressly alleges that defendant Detillon knew about and disregarded any risk to plaintiff's health. Instead, he acknowledges that she articulated a medical basis for her denial: "Ms. Detillon's reasoning was that the plaintiff weighed too much to receive Ensure . . . [as a] nutritional supplement[]." *Complaint*, Doc. No. 3, ¶ 43; *see also* Defendants' Exhibit C, Doc. No. 27-3. Plaintiff further alleges that defendant Detillon "informed the plaintiff that she had never heard of tap water, beef, pork, soy, milk, dairy product, or ruffage [sic] aggravating C.D., and that the plaintiff should be eating these foods as they are served in the cafeteria as part of his regular diet" and that she did not advise him to make any dietary modifications. *Complaint,* ¶ 43. Plaintiff's allegation represents a difference of opinion as to the appropriate care of plaintiff's conditions rather than an allegation that

13

defendant Detillon "subjectively perceived facts from which to infer substantial risk to the prisoner, that [s]he did in fact draw the inference, and that [s]he then disregarded that risk." *Comstock*, 273 F.3d at 703; *see also Williams v. Hartz*, 43 F. App'x 964, 966 (7th Cir. 2002) ("In any event Williams has offered no evidence that Hartz's refusal to place Williams on a special diet reflected a conscious disregard to his well being"). Summary judgment in favor of defendant Detillon is therefore appropriate .

**(2) Deliberate Indifference Claims Against Defendant Krisher**

As articulated in plaintiff's response to the *Motion for Summary Judgment*, his three general allegations against defendant Krisher are that this defendant "[p]ursu[ed] the same course of treatment despite repeated reports of worsening symptoms," did not allow plaintiff to see a gastroenterologist after May 2009, and "allowed [only] . . . the medications Azathioprine and Mesalamine." *Memorandum in Opposition*, Doc. No. 30, p.13. However, plaintiff's own verified *Complaint* contradicts the first and third of these general allegations. Plaintiff alleges in the *Complaint* that he was seen by defendant Krisher on three occasions, that the prescriptions following from each occasion were not identical, and that defendant Krisher prescribed medications other than Azathioprine and Mesalamine. *Complaint,* ¶ 50 (alleging that in March 2010 defendant Krisher "extended the plaintiff's prescriptions for Prilosec, Docusate, Asacol, Imuran, and Tramadol"), ¶ 59 (alleging that in September 2010 defendant Krisher admitted plaintiff to the infirmary, prescribed "two Prilosec tablets daily . . . for fourteen days, and Tramadol 100 mg three times daily for the duration of the plaintiff's Infirmary admission"), ¶¶ 68-71 (alleging that, between January 11 to 14, 2011, plaintiff was

14

seen by defendant Krisher, admitted to the infirmary, given Asacol, Azathioprine, Tylenol, and Zantac, and discharged with prescriptions for Tylenol, Zantac, and a fiber laxative, in addition to an existing prescription for Azathioprine).

Plaintiff's specific allegations in response to the *Motion for Summary Judgment* suggest that his real concern is with defendant Krisher's cancellation of his appointments with a specialist and the alleged denial of prescriptions for Tramadol, Colace, Prilosec, and the nutritional supplement Ensure. *Memorandum in Opposition*, Doc. No. 30, pp. 8-9 (concerning the nutritional supplement Ensure), 14-19 (concerning the prescription of Tramadol), 19-22 (concerning the prescription of Colace and Prilosec). In other words, plaintiff does not allege that he was denied a request to be seen by medical professionals within the prison. Instead, he is concerned with the denial of opportunities to be seen by an outside specialist and with the denial or cancellation of prescriptions. This Court rejects plaintiff's contention that these (and minor incidents noted in the *Complaint* but not raised in the *Memorandum in Opposition*) amount to deliberate indifference on the part of defendant Krisher.

Regarding the cancellation of his appointments with Dr. Levine, plaintiff does not have an Eighth Amendment right to see the doctor of his choice. *See Patterson v. Epp*, No. 85-1512, 1985 WL 13864, *1 (6th Cir. Oct. 15, 1985)("Although the plaintiff may have preferred treatment at the hospital by a particular physician, the district court did not err in concluding the defendant's decision to treat the wound within the prison medical center did not constitute cruel and unusual punishment."). Here, where plaintiff alleges that his symptoms were treated by defendant

15

Krisher on three occasions from March 2010 to January 2011 and by prison nurses on five additional occasions from July 2009 to January 2011, defendant Krisher's decision to treat plaintiff within the prison does not amount to an Eighth Amendment violation. That plaintiff's allegations in this regard do not rise to the level of a constitutional violation is particularly clear in light of the fact that plaintiff's allegations address the method by which he received Tramadol, Prilosec and Colace, not with the absence of treatment.

Regarding plaintiff's access to Tramadol, plaintiff does not have an Eighth Amendment right to the pain medication of his choice and he certainly does not have a right to receive such pain medication in precisely the manner he chooses. *See Thomas v. Coble*, 55 F. App'x 748, 749 (6th Cir. 2003) (holding that plaintiff and defendant "clearly disagreed over the preferred medication to treat [defendant]'s pain" but that "this difference of opinion does not support an Eighth Amendment claim"). Here, where defendant placed restrictions on plaintiff's receipt of Tramadol but allowed him to receive it upon admission to the infirmary, as he did in September 2010, plaintiff cannot show an Eighth Amendment violation. Plaintiff alleges that he was denied Tramadol during an infirmary admission on only one occasion, *i.e.,* the visit in January 2011; to the extent that plaintiff objects to the denial of Tramadol during this visit, he fails to demonstrate an Eighth Amendment violation. Plaintiff does not allege that he was denied treatment or medication; rather he alleges that he received prescriptions for Tylenol in addition to Asacol, Azathioprine, Zantac, and a fiber laxative, all of which were intended to treat his symptoms. *Complaint*, Doc. No. 3, ¶¶ 68-71. At most, plaintiff states a claim for negligence, which is not

actionable under the Eighth Amendment to the United States Constitution. *See Farmer,* 511 U.S. at 835.

Plaintiff also complains that he was required to purchase the over the counter medications Prilosec and Colace. This requirement was apparently imposed in conformity with a policy of the ODRC by which "non-prescription, over the counter medication and personal care items [are available] for inmates to purchase through each institutional commissary." Defendants' Exhibit 27-25, Doc. No. 27. Plaintiff does not have an Eighth Amendment right to receive free medical care regardless of his financial circumstances. *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir. 1997) ("If a prisoner is able to pay for medical care, requiring such payment is not 'deliberate indifference to serious medical needs.'"). Plaintiff has not established that he has been denied needed medical care because he could not afford to purchase Colace and Prilosec in the prison commissary during the relevant time. Although plaintiff alleges that he "has no guaranteed monthly income, and is considered indigent,"[4] *Complaint*, Doc. No. 3, ¶ 83, and that purchasing medication "would not have left enough money on [his] account for [him] to purchase necessary hygiene items such as soap and other essentials and nutritional supplements such as multivitamins," *id.,* ¶ 64, defendants have offered evidence that plaintiff's purchases at the prison commissary include such items as sugar cubes, cookies, candy, potato chips and pop. Defendants' Exhibit Z, Doc. No. 27-26. *See also* Plaintiff's Exhibit 30-1, p. 28

---

[4]Plaintiff states in his *Memorandum in Opposition* that "he receives [] $10.00 per month as State Pay as guaranteed monthly income." *Memorandum in Opposition*, Doc. No. 30, p.20. In his affidavit in support of his *Application and Affidavit by Incarcerated Person to Proceed without Prepayment of Fees,* Doc. No. 1, plaintiff avers that he receives $13.50 per month. He also indicated that he had received monetary gifts from family members, but that such gifts are not guaranteed. *Id.*

("Nutrition Note: . . . Commissary purchases [are] cheese danishes, ice cream, peanut butter, chips, brownies, cookies, honey buns, chili & coffee").[5] Requiring plaintiff to be selective in his purchases does not amount to an Eighth Amendment violation. *See Reynolds*, 128 F.3d at 174.

Finally, the allegations in the *Complaint* do not support plaintiff's contentions regarding a denial of access to over the counter medications Colace and Prilosec. Plaintiff alleges that neither was available on October 26, 2010, but he does not allege that this fact prevented him from taking the medicine: Plaintiff alleges that on October 20, 2010, he received a 30-day prescription of Prilosec and a 180-day prescription of Colace and that when his prescription for Colace was cancelled on October 28, 2010, the nurse gave him "until 11/29/10 to purchase." *Complaint*, Doc. No. 3, ¶ 62. He does not allege that either Colace or Prilosec was unavailable after this date. In fact, he alleges that, on November 16, 2010, he received another 180-day prescription for Prilosec which, according to the *Complaint*, continued until it was cancelled in favor of Zantac on January 12, 2011. *Id.* ¶¶ 65, 69.

Summary judgment in favor of defendant Krisher on plaintiff's Eighth Amendment claim is therefore appropriate.

## IV. Due Process and Retaliation Claims[6]

---

[5] In his *Memorandum in Opposition*, which is unverified and which therefore does not constitute admissible evidence, plaintiff offers a curious explanation for these purchases: he "has purchased food items from the commissary that are contradictory to his prescribed diet" because he "is regularly forced to borrow heartburn medication and stool softeners or laxatives" and is then "forced to purchase whatever the other inmates want in return." *Id.*, Doc. No. 30, p. 22.

[6] Plaintiff notes that defendants failed to address these claims in the *Motion for Summary Judgment*. *Memorandum in Opposition*, Doc. No. 30, p. 6. The Court notes that the *Initial Screen of the Complaint*, Doc. No. 4, addressed only plaintiff's Eighth Amendment denial of medical care claims.

Plaintiff also asserts a due process claim in connection with defendant Krisher's conditioning plaintiff's receipt of prescription narcotic pain medication on his admission into the infirmary. However, prisoners have no constitutionally protected liberty interest in receiving their medical care in the location of their choice or in remaining either in the general population or free of administrative segregation. *See Sandin v. Conner*, 515 U.S. 472 (1995). Plaintiff's due process claim against defendant Krisher cannot, therefore, prevail.

Plaintiff's retaliation claims against defendant Krisher are likewise without merit. A claim of retaliation cannot proceed if the defendant's actions would not have been different even absent the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 400(6th Cir. 1999) (*en banc*). As the Court concluded *supra*, the actions about which plaintiff complains, *i.e.*, the termination of prescribed Ensure, the decision to treat plaintiff's conditions within the prison, the limitations on plaintiff's access to narcotic pain medications and the requirement that plaintiff purchase over the counter medications from the prison commissary, were actions that were either medically justified or medically indicated or were required by official policy. Defendant Krisher is entitled to judgment on these claims as well.

**V.    Qualified Immunity**

In light of this Court's conclusion that plaintiff has failed to establish a violation of his constitutional rights, the Court need not and does not address defendants' arguments regarding qualified immunity. *Pearson v. Callahan*, 555 U.S. 223 (2009); *Saucier v. Katz*, 533 U.S. 194 (2001).

It is **RECOMMENDED** that defendants' *Motion for Summary Judgment*, Doc. No. 27, be **GRANTED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

July 17, 2012                          *s/Norah McCann King*
                                            Norah McCann King
                                   United States Magistrate Judge